UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOYCE WAGENMAKER | : | |
| Plaintiff | : | |
| | : | C.A. No. 08-41T |
| v. | : | |
| | : | |
| AMICA MUTUAL INSURANCE COMPANY | : | |
| Defendant | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE CERTAIN AF FIRMATIVE DEFENSES**

**INTRODUCTION**

This matter presents claims by Plaintiff, Joyce Wagenmaker, for uninsured motorist ("UM") coverage under an automobile policy that Defendant Amica issued. The policy was owned by one of Ms. Wagenmaker's friends, Vito Vitone but, by its express terms, the policy defined her as an "insured". It is in that capacity that she made claims for UM coverage. When Defendant denied her claims under the policy, Ms. Wagenmaker filed this action seeking, *inter alia,* declaratory relief regarding her rights under the policy.

In its Answer, Defendant raised a number of affirmative defenses that are improper under Rhode Island law, in light of the claims embodied in the Complaint. Many seek to raise defenses that are applicable to tort actions, having no bearing on actions such as this, which sound in contract.[1] Others seek to interpose defenses that could not conceivably have any relation to the matters advanced in the Complaint or the well-known circumstances attendant this matter, leaving one to wonder what possible

[1] While Ms. Wagenmaker has raised tort claims arising out of the manner in which Amica has adjusted these coverage claims, as will be shown below, the tort based affirmative defenses at issue (such as assumption of the risk) still have no application within the confines of this litigation.

motivation defense counsel—both counsel who signed the Answer as well as counsel who seeks to convince this Court that his request for admission *pro hac vice* should be considered favorably—could have had in encumbering the pleadings with their inclusion. As Fed.R.Civ.P.12(f) permits the Court to "strike from any pleading an insufficient defense or any …impertinent…matter" and because Ms. Wagenmaker is concerned that allowing these defenses to remain in the action will broaden the litigation beyond proper bounds, she brings this Motion to Strike.[2]

## ARGUMENT

Plaintiff, directs her request for judicial review under Fed.R.Civ.P. 12(f) to Defendant's Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Twelfth Affirmative Defenses. A decision to strike these defenses will carry out the function of Rule 12(f) which is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial…"*Beebe v. Mobility, Inc.*, C.A. No. 07CV1766 BTM (NLS), at* 7 (S.D.Cal. 2-20-2008)(Loislaw)(*citing, Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)). It will also advance the mandates of Fed.R.Civ.P. 1. Accordingly, Plaintiff turns to a discussion of these defenses and the deficiencies from which they suffer in the context of this litigation.

### Defendant's Second Affirmative Defense

Defendant's Second Affirmative Defense states

> "Defendant says that if the plaintiff was injured or damaged as alleged, the plaintiff assumed the risk of such injuries or damages".

---

[2] As the Advisory Committee Notes to Rule 12(f) state, this section "affords a specific method of raising the insufficiency of a defense, ***a matter which has troubled some courts, although attack has been permitted in one way or another.*** (Emphasis added).

**Defendant's Answer Pg. 4)**. In Rhode Island, "the doctrine of assumption of the risk operates as a complete bar to recovery for actions based on negligence and strict liability". *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 3 (1st Cir. 1994). The Rhode Island Supreme Court has interpreted the doctrine of assumption of the risk as an affirmative defense that "may be invoked … **by a tortfeasor** to escape or to diminish liability" for having created "an unreasonable risk of injury". *Hennessey v. Pyne*, 694 A.2d 691, 699 (R.I. 1997) (*citing Labrie v. Pace Membership Warehouse, Inc.*, 678 A.2d 867, 872 (R.I. 1996)) (emphasis added). Absent an express agreement, "a defendant must prove that a plaintiff 'knew of the existence of a danger, appreciated its unreasonable character, and then voluntarily exposed himself [or herself] to it'". *Id*.

Under any analysis it is unclear how Defendant's affirmative defense of assumption of the risk can apply to Plaintiff's claims—including those for bad faith. There are no facts at issue in these proceedings that could arguably constitute a risk that Ms. Wagenmaker assumed. Whether this defense it meant to refer to the underlying accident, the denial of the UM claims or the manner in which Defendant has adjusted her claims, Defendant has not, and cannot identify any risk of harm of which Ms. Wagenmaker was aware and the possible occurrence of which she assumed. Thus, Plaintiff submits that Defendant's Second Affirmative Defense stands as the first in a litany of boilerplate defenses that have no evidentiary or legal support[3] and which, therefore, should be stricken.

[3] Fed. R. Civ. P. 11 states that by presenting to the court a pleading, that person certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, "***the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery***". As with all the affirmative defenses that Plaintiff seeks to strike, this defense is devoid of evidentiary or legal support which therefore implicates the mandates of Rule 11. All that Defendant has managed to

**<u>Defendant's Fourth Affirmative Defense</u>**

Defendant's Fourth Affirmative Defense states

"This action is barred by the applicable statute of limitations".

(**Defendant's Answer Pg. 4)**. Once again, Defendant has made no effort to relate an affirmative defense to the claims sounding in contract and/or tort. Given that the law of Rhode Island has absolutely no overlap in the limitations periods that govern each type of claim, it is inherently improper for Defendant to assert an affirmative defense such as this unless the action were untimely with regard to ***both*** its contract and its tort claims—either under statute or pursuant to a private limitations period contained in the policy.[4] As Ms. Wagenmaker will demonstrate, there are neither facts nor legal authority anywhere that would even begin to suggest that she did not file this action in a timely manner.

Plaintiff's claims for declaratory relief concern the provisions of the contract of auto insurance that she claims Defendant breached. Thus, all of these claims are governed by the provisions of R.I.G.L. § 9-1-13. This statute provides, in relevant part:

> " (a) Except as otherwise specifically provided, all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after".

R.I.G.L. § 9-1-13(a). As to the application of this statute to this action, Rhode Island law is well-settled that the tenets of contract law apply to the interpretation of insurance

---

accomplish with these Affirmative Defenses is the unnecessary expenditure of time, effort, energy and expense by Plaintiff in litigating these spurious issues.

The seriousness of this motion is compounded by the fact that defense counsel moved for the admission *pro hac vice*, of a colleague who will presumably supervise or manage the defense. At a minimum, counsel should be required to explain the reason for allowing these defenses to be submitted to the court in an action that he now seeks to supervise or manage.

[4] Plaintiff notes that there is no such private limitations period and, therefore, Rhode Island statutory law applies.

policies. Indeed, the Rhode Island Supreme Court has held that an action against an insurance carrier for uninsured motorist coverage is an action that sounds in contract and which is subject to the statute of limitations for breach-of-contract claims found in Rhode Island General Laws § 9-1-13. *Pickering v. American Employers Ins. Co.*, 109 R.I. 143 (1971) The Court in *Pickering* reasoned that:

> "Although a tortious injury is an incidental element in the insured's suit against [her] insurer over a policy contract, the action is fundamentally one in contract. The plaintiff here would have no action if it were not for the coverage provided by her insurance".

*Id.* at 150.

In this action, given that the underlying tortfeasor was the operator of a hit-and-run vehicle (which the policy expressly defines as one that is "uninsured" for purposes of UM coverage), Ms. Wagenmaker would also have no action were it not for the coverage provided under Defendant's policy. Thus, the ten year limitations period embodied in R.I.G.L. § 9-1-13(a) applies to the contract claims raised herein. As Plaintiff commenced this action ***nineteen months*** after the underlying accident and only ***two months*** after Defendant summarily denied Plaintiff's claim for UM benefits under the policy, under any analysis, Plaintiff filed this action well within any limitations period that could arguably apply to these proceedings. Accordingly, Plaintiff submits respectfully that this Court should strike Defendant's Fourth Affirmative Defense for the reason that it has neither legal nor evidentiary support.

**<u>Defendant's Sixth Affirmative Defense</u>**

Defendant's Sixth Affirmative Defense reads:

> "The defendant states that the Complaint should be dismissed pursuant to Rule 12(B)(sic)(3) of the Federal Rules of Civil Procedure for improper venue".

(**Defendant's Answer P. 4**). In federal diversity cases, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C.A § 1391(a); *see also, Sentry Select Insurance Co. v. LBL Skysystems (U.S.A)*, 486 F. Supp. 2d. 496, 504-5 (E.D. Pa. 2007). One cannot apply this succinct test of proper venue and suggest, in good faith, that this matter should be transferred to any other court in the country. Not only is the sole defendant in this action a corporation which is incorporated in Rhode Island with its principal place of business here, as well, but virtually every event that gives rise to the claims that Plaintiff advances herein occurred in Rhode Island. Specifically:

1. Mr. Vitone, the owner and driver of the vehicle in which Ms. Wagenmaker was a passenger at the time of the underlying accident, resides in Rhode Island;

2. The policy Defendant at issue was negotiated, executed and issued in Rhode Island;

3. The underlying accident occurred in Rhode Island;

4. Ms. Wagenmaker received extensive treatment for her injuries in Rhode Island.

5. Defendant adjusted Ms., Wagenmaker's claims in Rhode Island so that any events that constitute a breach of Defendant's common law or statutory duties of good faith occurred here.

Moreover, perhaps the most fundamental issue concerning this matter is that venue speaks to the choice between or among federal district courts located within a

judicial district. Yet, Rhode Island ***only has one district court within its judicial district.*** While a district court may transfer a civil action to another judicial district where it may have been brought "for the convenience of parties and witnesses, in the interest of justice", 28 U.S.C. § 1404 (a), "[t]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum". *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *see also, Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)("Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed".); *Paradis v. Dooley*, 774 F.Supp.79, 82 (D.R.I. 1991)(*quoting Piper Aircraft* and *Gulf Oil*). And, when virtually every piece of relevant evidence is located in this district, transferring venue anywhere else would hardly serve the convenience of the parties, witnesses or anyone else.

Indeed, the public and private interest factors that a court may examine when considering a request to transfer include the following:

(1) ease of access to sources of proof;
(2) availability of compulsory process to compel attendance of witnesses;
(3) cost of attendance of willing witnesses;
(4) ease of a view of premises, if necessary;
(5) enforceability of the judgment, if obtained;
(6) advantages and obstacles to a fair trial;
(7) status of the court's trial calendar;
(8) familiarity of forum with applicable state law.

*Emissive Energy Corporation v. Armament Systems and Procedures,* C.A. 03-528L, at*8-9 (D.R.I. August 2, 2004)(Loislaw). The burden is on the defendant to show that a balance of these factors favors transfer. Id. at 9.

For the reasons set forth above, Defendant could not carry this burden under any view of the facts. Yet, it has somehow deemed it proper to ask this ***Court to dismiss Plaintiff's Complain***t "for improper venue." Accordingly, Plaintiff submits respectfully that this Court should strike Defendant's Sixth Affirmative Defense pursuant to Fed.R.Civ.P. 12(f) as it lacks any legal or evidentiary support.

**Defendant's Seventh Affirmative Defense**

Defendant's Seventh Affirmative Defense reads:

> "The defendant states that the Complaint should be dismissed pursuant to Rule 12(B(sic))(4) of the Federal Rules of Civil Procedure for insufficiency of process".

(**Defendant's Answer P. 4**). The referenced Rule "attacks the form of the process, rather than the method by which it is served". *Rowe v. United States Marshals Service,* C.A. No. 04-246 T., at* 3 (D.R.I. 2006)(Loislaw); *see also, Crane v. Battelle*, 127 F.R.D. 174, 177 (S.D. Cal. 1989)(A Rule 12(b)(4) challenge attacks the form of the summons and is generally brought on the theory that "the summons does not properly contain the names of the parties."). "Technically, therefore, a rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons". *U.S. v. Hafner*, 421 F.Supp. 2d 1220, 1225 n. 3 (N.D. 2006)(citing Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353, pp. 334-35 (3d Ed. 2004)) . Generally, dismissals for insufficiency of process are disfavored by courts as most

defects in process are technical and can be easily cured. *See*, *Crane*, 127 F.R.D. at 177 ("Defects in the form of summons are considered technical and a dismissal is not proper unless the party can demonstrate actual prejudice.").

Fed.R.Civ.P. 4(b), which governed the process that Plaintiff served in this action, states

> "[o]n or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant".

Fed.R.Civ.P. 4. The explicit language of Rule 4(b) requires two things from the plaintiff: (1) the proper filing of the complaint prior to service of the summons; and (2) the clerk's seal and signature. Both of these requirements were satisfied in the present case. On January 29, 2008, Plaintiff properly filed the Complaint and Civil Cover Sheet with the Clerk of the United States District Court for the District of Rhode Island. (**See Complaint with Civil Cover Sheet attached as Exhibit 1**). Thereafter, the Deputy Clerk of this Court on January 30, 2008 issued and signed a summons which Plaintiff served upon Defendant's agent. (**See Summons of January 30, 2008 attached as Exhibit 2**). In addition, the summons satisfied all the requirements of Fed.R.Civ.P. 4(a)(1)(A)-(G) as the summons' content :

1. names the court and the parties;
2. is directed to the defendant;
3. states the name and address of the plaintiff's attorney;
4. states the time within which the defendant must appear and defend;
5. notifies the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint;
6. is signed by the clerk; and

7. bears the court's seal

Fed.R.Civ.P. 4(a).

In the present case, Plaintiff is at a loss to understand how Defendant can claim that the process was somehow improper under the applicable Rule and, moreover, how any prejudice occurred. Therefore, Defendant's Seventh Affirmative Defense should be stricken as an insufficient defense for having no legal or evidentiary basis.

**Defendant's Eighth Affirmative Defense**

Plaintiff turns now to Defendants Eighth Affirmative Defense which reads:

> The defendant states that the Complaint should be dismissed pursuant to Rule 12(B)(sic)(5) of the Federal Rules of Civil Procedure for insufficiency of service of process".

(**Defendant's Answer P. 5**). Rule 12(b)(5) challenges the manner in which a plaintiff has delivered the complaint to the defendant. Wright & Miller, Federal Practice and Procedure, §1353, pp. 334-35 (3d Ed. 2004); *Crane*, *supra* at 176. In this matter, Plaintiff availed herself of the provisions of Rule 4(h)(1)(A) which provides for service to be made upon a corporation by "***following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made***." Rhode Island Rules of Civil Procedure 4(e)(3) which governs service upon private corporations in this State provides, in relevant part that:

> service shall be effected by "delivering a copy of the summons and complaint to an officer, a managing or general agent, ***or by leaving a copy of the summons and complaint at an office of the corporation with a person employed therein***, or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process".

R.I.Sup.Ct.R.Civ.P. 4(e)(3)(emphasis added).

On January 30, 2008, Plaintiff's process server, Anthony Marcello, Sr. (Constable # 6151), served Defendant in this matter by personally delivering copies of the Summons and Complaint to Defendant's principal place of business located at 100 Amica Way, Lincoln, Rhode Island 02865 and leaving said documents with Charlene Shoener, Sr. Executive Staff Assistant and agent for service. (**See Copy of Return of Service of January 30, 2008 attached as Exhibit 3**). Unless Ms. Shoener was not employed at this location at the time of service in this matter, Plaintiff met all the requirements of Fed.R.Civ.P. 4 for proper service.

The United States Court of Appeals for the First Circuit has held that "the root purpose underlying service of process is to ensure that a defendant receives fair notice of the suit and adequate opportunity to protect her interests". *Libertad v. Welch*, 53 F.3d 428, 429 (1st Cir. 1995). It is unclear, under any analysis, how the service of process in this case was improper under the applicable Rules. But, even if it were, one must strain to understand how it deprived Defendant of notice of this suit, deprived it of an adequate opportunity to protect its interests, or subjected it to any sort of prejudice, especially as Defendant filed its Answer in a timely fashion. Thus, Plaintiff submits respectfully that Defendant's Eighth Affirmative Defense lacks any evidentiary or legal support and should be stricken as an insufficient defense.

## CONCLUSION

For the reasons and authorities set forth above, Plaintiff, Joyce Wagenmaker respectfully asks this Court to grant her Motion to Strike the Affirmative Defenses which

Defendant has interjected improperly into these proceedings.

Plaintiff
By her Attorney

____/s/ David J. Oliveira______
DAVID J. OLIVEIRA, ESQ. #2516
155 South Main Street Suite 305
Providence, RI 02903
(401) 274-9191
(401) 274-9190 (Fax)
doliveira@djolaw.com
Date: _____02/28/2008________

**CERTIFICATION**

I hereby certify that the within was electronically filed with the Court using the ECF system. The following counsel of record are registered with the Court and will be served electronically through the ECF system and by regular mail, postage prepaid: **Nicole J. Todesco, Esq.,** Sloane & Walsh, LLP, Three Center Plaza, 8th Floor, Boston, MA 02108 and **Todd D. White, Esq.,** Adler Pollock & Sheehan, P.C., One Citizens Plaza, 8th Floor, Providence, RI 02903 on this 28th day of February, 2008.

___/s/ Nancy L. Pesaturo____

# Exhibit 1

Print Reset

JS-44 (Rev. 1/07 RI)

# CIVIL COVER SHEET

**I. (a) PLAINTIFFS**

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- 1 U.S. Government Plaintiff
- 3 Federal Question (U.S. Government Not a Party)
- 2 U.S. Government Defendant
- 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**Admiralty**
- 340 Marine(Injury to Seamen)
- 120 Marine (Other)

**Admin/Agency Appeals Other**
- 890 Other Statutory Actions (APA Appeals, IDEA Appeals, Other)

**Bankruptcy**
- 422 Appeal 28 U.S.C. § 158
- 423 Withdrawal 28 U.S.C. § 157

**Banks and Banking**
- 140 Negotiable Instruments
- 430 Banks and Banking
- 875 Customer Challenge to Subpoena (12 U.S.C. § 3410)

**Business and Commercial**

**Anti-trust**
- 410 Anti-Trust

**Construction Contracts**
- 130 Miller Act
- 190 Other Contracts

**Securities Law & Stockholder Suits**
- 160 Stockholders' Suits
- 850 Securities/ Commodities/ Exchange

**Other - Business/Comm.**
- 196 Franchise
- 490 Cable/Satellite TV

**Consumer Credit**
- 371 Truth in Lending
- 480 Consumer Credit
- 190 Other Contracts

**Civil Rights**

**Constitutional Law**
- 950 Constitutionality of State Statutes
- 440 Other Civil Rights (Constitutionality of Federal Statutes)

**Elections and Voting**
- 400 State Reapportionment
- 441 Voting

**Other - Civil Rights**
- 440 Other Civil Rights
- 443 Housing/ Accommodations
- 444 Welfare
- 446 Americans with Disabilities

**Copyright & Trademark (Intellectual Property)**
- 820 Copyright
- 840 Trademark

**Employment and Employee Benefits**

**Employment Discrimination**
- 442 Employment
- 445 Americans with Disabilities-Employment
- 440 Other -Civil Rights

**ERISA**
- 791 Employment Ret. Inc. Security Act

**Other Employment Benefits**
- 190 Other - Contract
- 442 Other -Employment

**Environmental Law**
- 893 Environmental Matters

**Indian Law**
- 890 Other Statutory Actions

**Insurance**
- 110 Insurance Contract

**Labor and Occupational Safety**
- 660 Occupational Safety/Health
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 730 Labor/Management Reporting and Disclosure Act
- 740 Railway Labor Act
- 790 Other Labor Litigation

**Miscellaneous Civil Cases**
- 150 Recovery of Overpayment and Enforcement of Judgment (Collections)
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (excluding Veterans)
- 153 Recovery of Overpayment of Veterans' Benefits
- 370 Other Fraud
- 440 Other Civil Rights (Immigration/Deportation)
- 450 Commerce
- 460 Deportation
- 610 Agriculture
- 620 Other Food and Drug
- 625 Drug related seizure of property
- 630 Liquor Laws
- 640 Railroad and Truck

**Miscellaneous Civil Cases Continued**
- 650 Airline Regs.
- 690 Other (Forfeiture)
- 690 Other (Health Care)
- 810 Selective Service
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS-Third Party (26 U.S.C. § 7609)
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 892 Economic Stabilization Act
- 894 Energy Allocation Act
- 895 Freedom of Information Act
- 900 Appeal of Fee Determination under Equal Access to Justice Act

**Patents (Intellectual Property)**
- 830 Patents

**Prisoner Petitions**
- 510 Motions to Vacate Sentence (2254)
- 510 Motions to Vacate Sentence (2255)
- 530 General (Habeas)
- 535 Death Penalty
- 540 Mandamus and Other
- 550 Civil Rights (1983)
- 555 Prison Conditions(1983)

**Real and Personal Property**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent, Lease and Ejectment
- 240 Torts to Land
- 290 All other Real Property
- 380 Other Personal Property Damage

**RICO**
- 470 RICO

**Social Security**
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

**Torts and Personal Injury**

**Mass Torts**
- 360 Other Personal Injury

**Products Liability**
- 195 Contract Product Liability
- 245 Tort Product Liability
- 315 Airplane Product Liability
- 345 Marine Product Liability
- 355 Motor Vehicle Product Liability
- 365 Personal Injury Product Liability
- 385 Property Damage Product Liability

**Professional Malpractice**
- 362 Personal Injury - Med. Malpractice

**Motor Vehicle Accidents/Slip and Fall**
- 350 Motor Vehicles
- 360 Other Personal Injury

**Other Torts and Personal Injury incl. Asbestos cases**
- 360 Other Personal Injury (Fed. Tort Claims Act)
- 310 Airplane
- 320 Assault, Libel and Slander
- 330 Federal Employers' Liability
- 360 Other Personal Injury
- 368 Asbestos Personal Injury

Print Reset

**V. ORIGIN** **(Place an "X" In One Box Only)**

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (Specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge From Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:

Brief description of cause:

**VII. REQUESTED IN COMPLAINT**

☐ Check if this is a Class Action Under F.R.C.P. 23

DEMAND $ Unspecified

JURY DEMAND: ☐ Yes ☐ No
(Check YES only if demanded in complaint)

**VIII. RELATED CASE(S) IF ANY**

JUDGE ____________________ DOCKET NUMBER ____________________

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

______________________________ ______________________________
Date Signature of Attorney of Record

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**III.** CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

**IV**. NATURE OF SUIT: Place an X in the appropriate box. Make sure to select the Nature of Suit from the category which best describes the primary cause of action found in your complaint. You must select only one nature of suit.

**VIII.** RELATED CASES, IF ANY: This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

FOR OFFICE USE ONLY

Receipt # __________ Amount __________ Applying IFP __________ Judge __________________ Mag. Judge ______________

control and to sustain several collisions (hereinafter referred to as the "Accident"). That vehicle has remained unidentified despite a police investigation to locate it.

6. As a result of the events described in the immediately preceding Paragraph, Ms. Wagenmaker suffered severe personal injuries and has suffered considerable resultant financial losses and endured great pain and suffering.

7. The Vitone Vehicle was a 1999 Chevrolet Corvette and was one of several owned by Mr. Vitone.

8. At the times material hereto, Mr. Vitone insured his vehicles with Defendant Amica.

9. On or about November 25, 2005, Defendant renewed Mr. Vitone's policy of insurance, Policy Number 961138-23YV (hereinafter referred to as the "Policy") which covered a number of vehicles including the Vitone Vehicle. See, Declarations Page for Personal Auto Policy No. 961138-23YV annexed hereto as Exhibit A and incorporated herein by reference.

10. The Policy provided coverage for Uninsured Motorists Coverage in the amount of $500,000 per accident for bodily injury. *Id.*

11. At the time of the Accident, the Declarations Page annexed hereto as Exhibit A was in effect, no other Declarations Page having been issued with respect to this Policy period.

12. Plaintiff Ms. Wagenmaker is defined as an "insured" under the terms of the Policy.

13. Plaintiff, Ms. Wagenmaker made a claim against Defendant for UM benefits under the Policy to compensate her for the bodily injuries that she sustained in the Accident.

14. Notwithstanding the information set forth on its own Declarations Page, Defendant, as is more fully set forth below, has denied that there was in effect at the time of the Accident, UM coverage for the bodily injuries that Ms. Wagenmaker sustained while a passenger in the Vitone Vehicle.

15. The bases for Plaintiff Ms. Wagenmaker's claim for coverage are fully set forth in the letter of her counsel to Amica of November 5, 2007, a copy of which is annexed hereto as Exhibit B and incorporated herein by reference.

16. In summary, the Policy defines the "hit-and-run" vehicle as an uninsured vehicle and defines Ms. Wagenmaker as an "insured". While the Policy does exclude UM coverage for "an **insured** while occupying, or when struck by, any motor vehicle owned by that **insured** which is not insured for this coverage under this policy" (emphases in the original) this exclusion would not apply to Ms. Wagenmaker because, although she is defined as an insured under the Policy, and although Defendant asserts that the Vitone Vehicle, which she was occupying when she sustained the bodily injuries which are the basis for her claims was not insured for UM coverage under the policy, Ms. Wagenmaker did **NOT** own the Vitone Vehicle.

17. Despite Ms. Wagenmaker's good faith claim for UM benefits as an insured under the Policy by, *inter alia,* providing to Defendant the detailed analysis embodied in Exhibit B, Defendant summarily and without responding to the analytical components of Exhibit B denied UM coverage for these claims.

18. Instead of addressing the Plaintiff's detailed analysis of coverage, Defendant, through its agent Robert Reifel, merely asserted that, in October of 2005, Mr. Vitone had requested that Defendant remove all coverages from the Vitone Vehicle except "Other Than Collision" coverage. *See,* Letter of Robert Reifel to Plaintiff's counsel of December 5, 2007, a copy of which is annexed hereto as Exhibit C and incorporated herein by reference.

19. In summary, Defendant alleged that, because "all coverages except "Other Than Collision" coverage were eliminated from" the Vitone Vehicle before the Accident, there was no UM coverage for Ms. Wagenmaker's claims.

20. Despite Defendant's assertions, the Policy defines a "covered auto" for purposes of the UM provisions embodied in Part C, as "any vehicle shown in the Declarations".

21. As noted above, because:

a. the Vitone Vehicle was "shown in the Declarations" from that document's creation in November of 2005 until the time of the Accident;

b. the Policy defines a "covered auto" as one shown in the Declarations;

c. the Policy provides UM benefits to an insured defined as "any other person occupying your covered auto";

d. Ms. Wagenmaker was occupying the Vitone Vehicle when she sustained her bodily injuries;

e. the Policy's express exclusion for UM benefits when an auto is not insured for UM coverage under the Policy ***extends only to an insured who <u>owns</u> the subject*** auto;

f. Ms. Wagenmaker did **NOT** own the Vitone Vehicle, Ms. Wagenmaker was not subject to the Policy's UM exclusion.

## <u>COUNT I—DECLARATORY RELIEF</u>

22. The allegations set forth in Paragraphs 1 through 21 above are incorporated herein as if set forth again in full.

23. By the Policy's clear, unambiguous and express terms, Plaintiff Ms. Wagenmaker is entitled to coverage under the Policy's UM provisions for the bodily injuries that she sustained in the Accident.

WHEREFORE. Plaintiff requests that this Honorable Court declare the rights and obligations of the Parties in and to the Policy, including all sums to which Plaintiff is entitled under the Policy for the bodily injuries which are the subject of her claims against Defendant, together with her costs and reasonable attorneys fees.

## <u>COUNT II—BREACH OF CONTRACT</u>

24. The allegations set forth in Paragraphs 1 through 23 above are incorporated herein as if set forth again in full.

25. By virtue of the fact that the Policy definition of "insured" includes Ms. Wagenmkaer under the facts presented, there exists a contractual relationship between her and Defendant that gives rise to contractual rights and obligations under the Policy.

26. Defendant's acts and omissions complained of herein constitute a breach of Defendant's obligations and duties under the Policy.

27. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered damages recoverable under the laws of the State of Rhode Island.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that exceeds the jurisdictional requirements of this Court, together with interest, costs, attorney fees, and such other relief as is appropriate in the circumstances.

**COUNT II—BAD FAITH PURSUANT TO R.I.G.L. § 9-1-33**

28. The allegations set forth in Paragraphs 1 through 27 above are incorporated herein as if set forth again in full.

29. Pursuant to R.I.G.L. § 9-1-33, Defendant had a legal duty to Ms. Wagenmaker to act in good faith in reaching its decision to deny her claim for UM benefits and in performing its obligations under the contract and applicable law.

30. Defendant breached the duty described in the immediately preceding Paragraph.

31. As a consequence of Defendant's breach, Plaintiff has suffered damages and incurred attorney fees in an effort to enforce her rights under law.

32. Pursuant to the provisions of R.I.G.L. § 9-1-33, Defendant is obligated to pay compensatory and punitive damages, as well as reasonable attorney fees as a consequence of the claims raised in this Count.

WHEREFORE, Plaintiff demands judgment against Defendant for all damages recoverable under the law of the State of Rhode Island for the matters set forth in this

Count, including those provided by the provisions of R.I.G.L. § 9-1-33, together with interest and costs.

## COUNT III—BREACH OF THE COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

33. The allegations set forth in Paragraphs 1 through 32 above are incorporated herein as if set forth again in full.

34. Defendant had an obligation under the common law of the State of Rhode Island to handle, manage and respond to Ms. Wagenmaker's claims under the Policy in a manner that complied with Defendant's common law duty of good faith and fair dealing.

35. By virtue of its acts and omissions complained of in this action including, *inter alia*, its failure to comply with the provisions of Rhode Island's Unfair Claims Settlement Practices Act, R.I.G.L. § 27-9.1-1 *et seq.*, Defendant has breached its duty more fully described in the immediately preceding Paragraph.

36. As a direct and proximate result of Defendant's breach of this duty, Plaintiff has suffered damages and has been made to resort to expensive and burdensome litigation far removed from her home.

WHEREFORE, Plaintiff demands judgment against Defendant for all damages recoverable under the law of the State of Rhode Island for the matters set forth in this

Count, together with interest and costs.

Plaintiff
By her Attorney

DAVID J. OLIVEIRA, ESQ. #2516
155 South Main Street Suite 305
Providence, RI 02903
(401) 274-9191
(401) 274-9190 (Fax)
doliveira@djolaw.com
1/29/08

***Plaintiff demands a trial by jury of all claims hereunder so triable and designates David J. Oliveira, Esq. as trial counsel.***

M

# Amica Mutual Insurance Company

Lincoln, Rhode Island



**DECLARATIONS** PERSONAL AUTO POLICY NO. 961138-23YV

**NAMED INSURED AND ADDRESS**
VITO VITONE AND
LINDA VITONE
290 SANCTUARY DR
EAST GREENWICH RI 02818

**POLICY PERIOD: 12:01 A.M., STANDARD TIME**
From: NOVEMBER 25, 2005
To: NOVEMBER 25, 2006

DUPLICATE

| Auto No | DESCRIPTION OF AUTO(S) OR TRAILER(S) | LOSS PAYEE |
|---|---|---|
| 1 | 2000 CHRYSLER 300M SEDAN<br><br>VIN 2C3HE66G4YH168716<br>USE: AVG DAILY MILES LESS THAN 30 | |
| 2 | 1994 MERCEDES-BENZ E420 SEDAN<br><br>VIN WDBEA34E2RC043128<br>USE: AVG DAILY MILES 30 OR MORE | |
| 3 | 2002 LINCOLN LS SEDAN<br><br>VIN 1LNHM86S82Y711671<br>USE: AVG DAILY MILES LESS THAN 30 | FORD MOTOR CREDIT CORP.<br>P.O. BOX 105704<br>ATLANTA, GA 30348 |
| 4 | 1999 JEEP CHEROKEE<br>CLASSIC UT<br>VIN 1J4FF68S7XL528459<br>USE: AVG DAILY MILES LESS THAN 30 | |
| 5 | 1998 CHEVROLET CORVETTE<br>CONVERTIBLE<br>VIN 1G1YY32G8W5115652<br>USE: AVG DAILY MILES LESS THAN 30 | |
| 6 | 2005 HYUNDAI TUCSON GLS AWD/LX<br>AWD UTL<br>VIN KM8JN72D95U194649<br>USE: AVG DAILY MILES LESS THAN 30 | |

The Auto(s) or Trailer(s) described in this policy is principally garaged at the above address unless otherwise stated.

SAFE DRIVER PLAN CHARGEABLE POINTS - 2

**RATES ARE BASED ON THE FOLLOWING HOUSEHOLD DRIVERS**

| Driver | NAME | DRIVER'S LICENSE NUMBER | Date of Birth Mo. | Day | Year | Male or Female | Married or Single | Date First Licensed Mo. | Year |
|---|---|---|---|---|---|---|---|---|---|
| 1 | VITO VITONE | 8824030 | 10 | 05 | 46 | M | M | 10 | 63 |
| 2 | LINDA VITONE | 8822494 | 08 | 02 | 49 | F | M | 08 | 65 |
| 3 | ANTHONY J. VITONE | 2040059 | 08 | 15 | 84 | M | S | 06 | 01 |
| 4 | | | | | | | | | |
| 5 | | | | | | | | | |
| 6 | | | | | | | | | |

# Amica Mutual Insurance Company

Lincoln, Rhode Island



**CONTINUATION OF DECLARATIONS FOR PERSONAL AUTO POLICY NO.** 961138-23YV

**NAMED INSURED AND ADDRESS**

VITO VITONE AND
LINDA VITONE
290 SANCTUARY DR
EAST GREENWICH RI 02818

DUPLICATE

COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY IS SHOWN FOR THE COVERAGE

| COVERAGES | LIMIT OF LIABILITY | PREMIUMS AUTO 1 2000 CHRY | AUTO 2 1994 MERC | AUTO 3 2002 LINC |
|---|---|---|---|---|
| A. LIABILITY | $ 500,000 each accident | $ 607.00 | $ 753.00 | $ 671.00 |
| B. MEDICAL PAYMENTS | $ 5,000 each person | $ 13.00 | $ 17.00 | $ 15.00 |
| C. UNINSURED MOTORISTS | $ * each accident | | | |
| D. DAMAGE TO YOUR AUTO | (ACV means Actual Cash Value) | | | |
| 1. Collision Loss | AUTO 1 AUTO 2 AUTO 3 | | | |
| ACV minus deductible of | $ 500 $ 500 $ 500 | $ 403.00 | $ 423.00 | $ 548.00 |
| 2. Other Than Collision Loss | AUTO 1 AUTO 2 AUTO 3 | | | |
| ACV minus deductible of | $ 500 $ 500 $ 500 | $ 61.00 | $ 84.00 | $ 79.00 |
| TOWING AND LABOR COSTS | $ 100 each disablement | $ 8.00 | $ 17.00 | $ 8.00 |

*UNINSURED MOTORISTS - BODILY INJURY
POLICY LIMIT $500,000 EACH ACCIDENT

**PARKING ARRANGEMENTS**

| | |
|---|---|
| AUTO 1 | OFF STREET |
| AUTO 2 | IN GARAGE |
| AUTO 3 | IN GARAGE |

TOTAL PREMIUM FOR EACH AUTO $ 1,092.00 $ 1,294.00 $ 1,321.00

# Amica Mutual Insurance Company

Lincoln, Rhode Island



**CONTINUATION OF DECLARATIONS FOR PERSONAL AUTO POLICY NO.** 961138-23YV

**NAMED INSURED AND ADDRESS**

VITO VITONE AND
LINDA VITONE
290 SANCTUARY DR
EAST GREENWICH RI 02818

DUPLICATE

COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY IS SHOWN FOR THE COVERAGE

| COVERAGES | LIMIT OF LIABILITY | PREMIUMS AUTO 4 1999 JEEP | AUTO 5 1998 CHEV | AUTO 6 2005 HYUN |
|---|---|---|---|---|
| **A. LIABILITY** | $ 500,000 each accident | $ 1,895.00 | $ 671.00 | $ 671.00 |
| **B. MEDICAL PAYMENTS** | $ 5,000 each person | $ 43.00 | $ 15.00 | $ 15.00 |
| **C. UNINSURED MOTORISTS** | $ * each accident | | | |
| **D. DAMAGE TO YOUR AUTO** | (ACV means Actual Cash Value) | | | |
| **1. Collision Loss** ACV minus deductible of | AUTO 4 $ 500 / AUTO 5 $ 500 / AUTO 6 $ 500 | $ 968.00 | $ 500.00 | $ 528.00 |
| **2. Other Than Collision Loss** ACV minus deductible of | AUTO 4 $ 500 / AUTO 5 $ 500 / AUTO 6 $ 500 | $ 153.00 | $ 88.00 | $ 74.00 |
| **TOWING AND LABOR COSTS** | $ 100 each disablement | $ 8.00 | $ 8.00 | $ 8.00 |

*UNINSURED MOTORISTS - BODILY INJURY
POLICY LIMIT $500,000 EACH ACCIDENT
POLICY PREMIUM $392.00

**PARKING ARRANGEMENTS**

AUTO 4 OFF STREET
AUTO 5 IN GARAGE
AUTO 6 IN GARAGE

TOTAL PREMIUM FOR EACH AUTO $ 3,067.00 $ 1,282.00 $ 1,296.00
UNINSURED MOTORISTS - BODILY INJURY POLICY PREMIUM $ 392.00
TOTAL PREMIUM $ 9,744.00

# Amica Mutual Insurance Company

Lincoln, Rhode Island



**CONTINUATION OF DECLARATIONS FOR PERSONAL AUTO POLICY NO.** 961138-23YV

**NAMED INSURED AND ADDRESS**

VITO VITONE AND
LINDA VITONE
290 SANCTUARY DR
EAST GREENWICH RI 02818

DUPLICATE

**SPECIAL DISCOUNTS**

PASSIVE RESTRAINT DISCOUNT AUTOS 1,2,3,4,5,6
ANTI-LOCK BRAKING SYSTEM AUTOS 1,2,3,5,6
MULTI-CAR DISCOUNT
ANTI-THEFT DEVICE DISCOUNT AUTOS 1,2,3,5,6

**Form and Endorsements made part of this policy at time of issue:**

| | |
|---|---|
| PP 00 01 01 05 | PERSONAL AUTO POLICY |
| PP 03 03 04 86 | TOWING AND LABOR COSTS COVERAGE |
| AM 00 57 10 05 | LOSS PAYABLE CLAUSE |
| PP 04 90 01 05 | UNINSURED MOTORISTS COVERAGE - RHODE ISLAND |
| PP 01 89 02 05 | AMENDMENT OF POLICY PROVISIONS - RHODE ISLAND |
| AM 00 28 12 01 | AMENDMENT OF PERSONAL AUTO POLICY PROVISIONS |
| PP 03 09 01 05 | SINGLE LIABILITY LIMIT |
| PP 04 38 06 98 | SINGLE UNINSURED MOTORISTS LIMIT - RHODE ISLAND |
| PP 13 01 12 99 | COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT |
| RI 00 06 02 01 | RHODE ISLAND MUTUAL PROVISIONS - NON-DIVIDEND POLICY |

This policy shall not be valid unless countersigned by our authorized agent or representative.

Countersigned by Peter H. Cameron

Authorized Representative

David J. Oliveira, Esq.
Attorney & Counsellor at Law

155 South Main Street, Suite 305
Providence, RI 02903
ph. 401.274.9191
fax. 401.274.9190
doliveira@djolaw.com
www.djolaw.com

Admitted in RI & MA

November 5, 2007

Mr. Robert Reifel, CPCU
Sr. Claims Supervisor
Amica
P.O. Box 6008
Providence, RI 02940-6008

***Re: Vito Vitone/ File No. L99200605081***
***Accident of July 3, 2006***

Dear Mr. Reifel:

This firm is legal counsel to Joyce Wagenmaker with regard to an automobile accident which occurred on July 3, 2006 on Route 95 North in Warwick, Rhode Island (the "Accident"). At that time, Ms. Wagenmaker was a passenger in a vehicle owned and operated by your insured, Vito Vitone of West Warwick, Rhode Island who, we understand, promptly notified Amica of the Accident and made a claim for UM coverage with respect thereto. I am in receipt of your letter of May 30, 2007 to Todd White, Mr. Vitone's counsel, in which you reaffirm Amica's denial of UM coverage to Mr. Vitone with respect to the Accident. I write to you now to address claims by Ms. Wagenmaker for UM coverage under Mr. Vitone's policy of insurance.

While processing her claims against Safeco, the carrier that provided UM coverage to Ms. Wagenmaker, I recently obtained a complete copy of Mr. Vitone's policy with Amica, Policy Number: 961138-23YV (hereinafter referred to as the "Policy") and have carefully reviewed Part C of the Policy which governs claims for UM coverage. I have also reviewed the Policy's Declarations Page that lists certain vehicles which Mr. Vitone owned at the time of the Accident. Finally, I analyzed this information against the backdrop of my understanding that the vehicle involved in the Accident, a 1998 Chevrolet Corvette listed as Auto No. 5 on the Policy's Declarations Page (hereinafter referred to as the "Vitone Vehicle"), had been removed from the Policy over the winter months, with coverage not having been replaced prior to the Accident. While it appears that Paragraph A. 1. of the Exclusions section of Part C of the Policy[1] might deny UM coverage to Mr. Vitone, we believe that the clear and unambiguous Policy terms would afford coverage to Ms. Wagenmaker for the serious injuries she sustained in the Accident. In this regard, I provide the following analysis with all citations and discussion of contract language meant to refer to the Policy.

[1] I discuss this exclusion in more detail below, specifically its application to Ms. Wagenmaker.

David J. Oliveira, Esq.
Attorney & Counsellor at Law

Mr. Robert Reifel, CPCU
Page 2
November 5, 2007

First, Paragraph A of the Insuring Agreement in Part C, provides that, if Ms. Wagenmaker is an **insured** under Part C, then Amica must pay to her compensatory damages for any bodily injuries that she received, to the extent that she is legally entitled to recover such compensation from the owner or operator of an **uninsured motor** vehicle. The only other requirement under this Paragraph is that the owner's or operator's liability must arise out of the ownership, maintenance or use of the **uninsured motor vehicle.** Those terms that I have placed in bold type above are defined in Paragraph B of Part C's Insuring Agreement. I turn now to these definitions.

Considering first whether the Accident involved an **uninsured motor vehicle,** I note that Paragraph C. 3. defines such a vehicle as including one:

> 3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:
>
> * * *
>
> c. **Your covered auto.**

The Police Report concerning the Accident, as well as all witness statements known to us, establish that the Vitone Vehicle was struck in the rear by another vehicle that fled the scene and which has never been identified. As discussed more fully in the following paragraph, because the Vitone Vehicle was still designated as Auto No. 5 on the Declarations Page at the time of the Accident, it was a **covered auto.** Thus, Ms. Wagenmaker suffered bodily injuries for which the owner or operator of an **uninsured motor vehicle** is legally liable. I turn now to a consideration of whether she was defined as an **insured** as, if she was, she is entitled, in the first instance, to coverage under Part C, unless otherwise excluded by the Policy's terms.

An **"insured"** is defined under Paragraph B. of Part C's Insuring Agreement. In addition to the named insured (Vito Vitone and Linda Vitone) Paragraph B. 2. includes within this definition, "[a]ny other person occupying **your covered auto.**" Part C. does not contain a definition of the term **your covered auto,** thus requiring reference to Paragraph J. of the Policy's general Definitions section which begins on Page 1 of 14. Specifically, Paragraph J. 1. defines **your covered auto** as "[a]ny vehicle shown in the Declarations." Accordingly, as the Vitone Vehicle was shown in the Declarations on the date of the Accident, Ms. Wagenmaker was an **insured** for purposes of coverage under the Insuring Agreement of Part C unless that coverage was otherwise excluded. For that reason, I turn to the applicable exclusions under Part C.

We understand that the only basis upon which Amica has denied UM coverage for Mr. Vitone with respect to the Accident, is the fact that he had removed the Vitone Vehicle from the Policy after the Policy (including the Declarations) was issued but before the Accident occurred.

David J. Oliveira, Esq.
Attorney & Counsellor at Law



Presumably, in reaching this conclusion, Amica relied on Paragraph A. 1. of Part C's language governing Exclusions which would require that we consider whether, under the Policy's language, this exclusion would apply to Ms. Wagenmaker, as well. With that in mind, I consider now the Exclusions provisions under Part C of the policy that begin on Page 7 of 14, thereof.

Paragraph A. 1. provides, in relevant part:

> A. We do not provide Uninsured Motorists Coverage for bodily injury sustained by:
>
> 1. By an **insured** while occupying, or when struck by, any motor vehicle owned by that **insured** which is not insured for this coverage under this policy.

As is apparent, this section excludes coverage under Part C for an insured who is occupying a vehicle which is not insured for coverage under Part C, where that vehicle is owned by the insured. Thus, because Mr. Vitone owned the Vitone Vehicle, to the extent that there was no coverage on the Vitone Vehicle under Part C, he would be excluded from UM coverage. Of course, as Ms. Wagenmaker had no ownership or other interest in the Vitone Vehicle, this exclusion, **on its face**, would not apply to her. Accordingly, we believe that Ms. Wagenmaker satisfied all requirements for coverage under Part C and that the Policy does not contain any language that would act to exclude this coverage.

Based on the foregoing analysis of Policy terms that are clear and unambiguous, we hereby make demand that Amica acknowledge Ms. Wagenmaker's entitlement to UM coverage under the Policy, for the bodily injuries that she sustained in the Accident. Once we receive such acknowledgement, I shall provide to you promptly a comprehensive demand for settlement. In the interim, kindly call with any specific questions or comments that you may have.

Sincerely,

David J. Oliveira, Esq.

DJO: nlp
cc: Mr. David Reeves, Safeco Insurance Company of Illinois

Amica
AUTO HOME LIFE
100th ANNIVERSARY

CORPORATE OFFICE
One Hundred Amica Way
Lincoln, Rhode Island 02865-1156
Mail: PO Box 6008, Providence, RI 02940-6008
Toll-free: 1-800-62-Amica (1-800-622-6422)
Claims Fax: 1-866-774-3318
Sales/Service Fax: 1-401-333-4610

December 5, 2007

David J. Oliveira, Esq.
135 South Main Street, Suite 305
Providence, RI 02903

RECEIVED
DEC 06 2007
David J. Oliveira, Esq.

Re:
File Number: L99200605081
Our Insured: Vito Vitone
Your Client: Joyce Wagenmaker
Date of Loss: 07/03/06

Dear Mr. Oliveira:

I am writing to respond to your November 5, 2008 correspondence concerning the above-reference matter.

After careful and thoughtful consideration of the information and contentions contained in your letter, I regret to inform you that the Personal Auto Policy (Policy No 961138-23YV) issued by AMICA Mutual Insurance Company affords no coverage for claims arising out of the July 3, 2006 motor vehicle accident. More specifically, there is no coverage under the policy for your client's claim for Uninsured Motorist ("UM") benefits.

Independent of the application of the Policy exclusion you have referred to, coverage is lacking in this matter in light of the following circumstances:

In October of 2005, Vito Vitone contacted AMICA and requested the deletion and elimination of all coverages (except "Other Than Collision" coverage) for his 1998 Chevrolet Corvette. Consistent with this request, AMICA then made the necessary changes and a new policy was issued with the corresponding reductions in premium. AMICA also provided Mr. Vitone with written confirmation of the elimination of coverages via correspondence dated October 13, 2005. The correspondence included a "Coverage Confirmation" which indicated that Liability, Medical Payments, Collision Loss and Uninsured Motorists Coverage were "not covered." Simply put, the insurance contract was modified and these coverages were removed.

Because all coverages (except "Other Than Collision" coverage) were eliminated for 1998 Chevrolet Corvette prior to the subject accident, there is no coverage for any UM claim presented by or on behalf of your client. Simply put, such coverage did not exist for this vehicle.

In closing, please note that AMICA does not and should not be deemed to have waived all or any rights or grounds it may have in connection with the above-referenced policy, nor should it be deemed to be estopped from asserting all or any coverage defenses that are currently available under the policy or any defenses which may become applicable in this matter. No act of AMICA shall be construed as an admission of liability or as an admission or coverage.

Should you have any additional information or arguments which you believe bear on our coverage determination, or should you have any questions, please do not hesitate to contact me.

I will be available to you to discuss the position we have taken. Should you, however, wish to contact the Rhode Island Insurance Division regarding this matter, it maintains a section to investigate Complaints at 223 Richmond Street, Providence, RI, 02903, The Rhode Island Insurance Division can be contacted by telephone at 401-277-2223.

The above paragraph is required by Rhode Island Regulations.

Thank you.

Sincerely yours,

Robert Reifel, CPCU
Sr. Claims Supervisor
Email: rreifel@amica.com

RTR

Cc: David Reeves, Safeco Insurance Company of Illinois

# Exhibit 2

CA 08 41

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of Rhode Island

JOYCE WAGENMAKER
V.
AMICA MUTUAL INSURANCE COMPANY

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

TO: (Name and address of Defendant)

Serve Upon: Secretary
Robert K. Mackenzie
100 Amica Way
Lincoln, RI 02865

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

David J. Oliveira, Esq.
155 South Main Street
Suite 305
Providence, RI 02903

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

CLERK

DATE 1/30/08

(By) DEPUTY CLERK

# Exhibit 3

Charlene Shoener
Charlene Shoener
Sr. Exec. Staff Asst. Agent for Service

AO 440 (Rev. 10/93) Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me(1) | DATE 1-30-08 |
| NAME OF SERVER *(PRINT)* Anthony Marcello Sr | TITLE D-Party |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the third-party defendant. Place where served: ______

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: ______

☐ Returned unexecuted: ______

☒ Other (specify): Left with Charlene Shoener Agent for Service Serving Robert K. McKenzi 100 Amica Way Lincoln RI 02865

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| 0 | 35.00 | 35.00 |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on 1-30-08
Date

[signature] Anthony Marcello Sr.
Signature of Server

34 [illegible] St [illegible] 02886
Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.