UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

C. A. NO.: 08-cv-00041-T-DLM

JOYCE WAGENMAKER,
Plaintiff,

v.

AMICA MUTUAL INSURANCE COMPANY,
Defendant/Third-Party Plaintiff,

v.

VITO VITONE,
Third-Party Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT/THIRD-PARTY PLAINTIFF, AMICA MUTUAL INSURANCE COMPANY'S OPPOSITION TO THIRD-PARTY DEFENDANT'S MOTION TO DISMISS**

## BACKGROUND

The parties in this action have asserted claims for declaratory relief for the purpose of determining their respective rights and obligations under insurance policies issued by AMICA Mutual Insurance Company ("AMICA") to Vito Vitone ("Vitone"). This matter arises out of a motor vehicle accident which occurred in Cranston, Rhode Island on July 3, 2006. Vitone, who was operating his 1998 Chevrolet Corvette, and his passenger, Joyce Wagenmaker ("Wagenmaker"), allege that they sustained personal injuries as a result of a collision with an unidentified vehicle. Wagenmaker commenced this action and asked the Court to determine and declare that she is entitled to Uninsured Motorist coverage under AMICA policy. AMICA responded with a counterclaim against Wagenmaker and a Third-Party Complaint against Vitone. AMICA seeks a declaration that there is no coverage for the Uninsured Motorist claims because Vitone deleted all coverages (except "Other

Than Collision" coverage) for his 1998 Chevrolet Corvette several months before the accident.

## PROCEDURAL HISTORY

On January 30, 2008, Wagenmaker, a citizen of Illinois, commenced this action against AMICA, a Rhode Island corporation. *Ex. 1, Complaint.* Plaintiff claimed her damages from these claims exceeded $75,000.00. She also alleged that that subject matter jurisdiction existed pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy exceeded $75,000.00 and parties were of diverse citizenship – Wagenmaker was a citizen of Illinois and AMICA was a citizen of Rhode Island. *Ex. 1.*

On February 6, 2008, AMICA filed an Answer and asserted counterclaims for declaratory judgment pursuant to 28 U.S.C. §2201(a) against Wagenmaker. *Ex. 2, Answer.* Pursuant to Fed. R. Civ. P. 14, AMICA also filed a third-party complaint for declaratory judgment pursuant to 28 U.S.C. §2201(a) against Vitone. *Ex. 3, AMICA's Third-Party Complaint for Declaratory Judgment.*

By the instant Motion, Vitone alleges that the Court lacks subject matter jurisdiction because AMICA destroyed "complete diversity necessary for subject matter jurisdiction" by impleading Vitone, a citizen of Rhode Island, as a third-party defendant in the original civil action. AMICA respectfully request that the Court should deny the Motion to Dismiss because the Court should exercise supplemental jurisdiction over AMICA's third-party claims under 28 U.S.C. §1367.

## ARGUMENT

**A. THE COURT MUST DENY VITONE'S MOTION TO DISMISS BECAUSE IT CAN EXERCISE SUPPLEMENTAL JURISDICTION OVER AMICA'S THIRD-PARTY CLAIMS UNDER 28 U.S.C. sec. 1367(a).**

This Court must deny Vitone's Motion to Dismiss because it can exercise supplemental jurisdiction under over AMICA's Third-Party Claims against Vitone under 28 U.S.C. sec. 1367(a). Contrary to the unsupported assertions of the Third-Party Defendant, it matters not that AMICA and Vitone are "nondiverse" parties. After all, Section 1367(a) expressly provides that in any action in which the district court has original jurisdiction it may exercise supplemental jurisdiction over all other claims that arise from the same case or controversy. 28 U.S.C. sec. 1367(a); Exxon Mobil Corp. v. Allapath Service, Inc., 545 U.S. 546, 551 (2005); see generally Insurance Company of North America v. SS Cape Charles, 843 F. Supp. 893 (S.D.N.Y. 1994) (supplemental jurisdiction over third-party claims); Bruce v. Middletown, 781 F. Supp. 1013 (S.D.N.Y. 1992) (same). Thus, because AMICA's third-party claims for declaratory judgment against Vitone share the same "common nucleus of operative facts" as Wagenmaker's claims against AMICA, supplemental jurisdiction exists pursuant to 28 U.S.C. sec. 1367(a). Moreover, the values of judicial economy, convenience and fairness make it appropriate to exercise supplemental jurisdiction over AMICA's third-party claims.

**1. The Court has original jurisdiction over Plaintiff's claims (and AMICA's counterclaim) under 28 U.S.C. §1332(a) based on diversity of citizenship and the alleged amount in controversy.**

"In order to provide a neutral forum for what have come to known as diversity cases, Congress [] has granted district court original jurisdiction in civil actions between citizens of different States . . .. Exxon Mobil Corp. v. Allapath Service, Inc., 545 U.S. 546, 551 (2005). 28 U.S.C. §1332(a) "requires that the matter in controversy in a diversity case exceed a specified amount, currently $75,000.00." Id. Here, Court can exercise original jurisdiction over plaintiff's claim for declaratory relief against AMICA pursuant 28 U.S.C. §1332(a) because the plaintiff, Wagenmaker, is a citizen of Illinois, the defendant, AMICA, is a citizen of Rhode Island, and plaintiff alleges that her damages exceed $75,000.00. *Ex. 1.*

**2. The Court has supplemental jurisdiction over AMICA's third-party claim against Vitone because it is part of the same case or controversy as the plaintiff's claims against AMICA.**

Until 1990, "even when the district court had original jurisdiction over one or more claims between particular parties, the jurisdictional statutes did not authorize supplemental jurisdiction over additional claims involving other parties." Exxon Mobil Corp. v. Allapath Service, Inc., 545 U.S. 546, 551 (2005). However, in 1990, Congress "passed the Judicial Improvement Act . . . which enacted" 28 U.S.C. §1367. Id. 28 U.S.C. §1367(a) provides as follows:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such

supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. sec. 1367 (*attached hereto as Exhibit 4).*

In Exxon Mobil Corp. v. Allapath Service, Inc., 545 U.S. 546, 551 (2005), the United States Supreme Court held that Section 1367(a) is fully applicable in diversity actions. The court noted that the statute contains "a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the districts courts would have original jurisdiction. The last sentence of [28 U.S.C.] §1367(a) makes it clear that the grant of supplemental jurisdiction extends to all claims involving joinder or intervention of additional parties." Exxon Mobil Corp., 545 U.S. at 558.

It is now well established that the original defendant in a diversity suit can implead a non-diverse third-party under 28 U.S.C. sec. 1367 so long as the third-party claims arise from the same case or controversy. See Exxon Mobil Corp., 545 U.S. at 558; see also Washington Hospital Center National Rehabilitation Hospital v. Collier, 947 F.2d 1948, 1500 (D.C. Cir. 1991) (discussing ancillary jurisdiction and stating that "the original defendant in a diversity suit [can] implead a nondiverse third-party that [i]s arguably liable to the third-party plaintiff 'for all or part of the [original] plaintiff's claim against the third party plaintiff."); see generally Seabrook v. Jacobson, 153 F.3d 70, 71 (2d Cir. 1998); 4 Moore's Federal Rule Pamphlet 2007, sec. 1367.2 (Section 1367 permits a district court to exercise supplemental jurisdiction to decide claims that would otherwise be outside federal jurisdiction if those claims are sufficiently related to claims over which the court does have original jurisdiction).

It also is generally accepted that the "same case or controversy" standard is satisfied if the "claims that share 'a common nucleus of operative fact' such that it would ordinarily be expected that the plaintiff try the claims in the same proceeding . . . ." O'Bannon v. Friedman's, Inc., 437 F.Supp.2d 490, 492 (D.Md, 2006); see also United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966). "In expounding upon the concept of a 'common nucleus of operative fact,' the Forth Circuit has found that supplemental jurisdiction . . . may be found where the claims 'revolve around the same fact pattern[.]'" Id. at 493 (citing White v. County of Newberry, 985 F.2d 168, 172 (4th Cir. 1993); see Development Finance Corp. v. Alpha Housing & Health Care, Inc., 54 F.3d 156 (D. Pa. 1995) (claims of intervenor were "so related to claim in the original action . . . that they form part of same case or controversy."); cf Interconsult, AG v. Safeguard International Partners, LLC, 356 F. Supp. 2d 505, 506 (D. Pa. 2005) ("claims 'have little or no factual or logical interdependence'"). "Supplemental claims may be separate claims, or they may merely be different 'counts' or 'grounds' or 'theories' in support of what is essentially a single claim."White v. Newberry, 985 F.2d 168 (S.C. 1993).

In O'Bannon v. Friedman's, Inc., 437 F.Supp.2d 490, 492 (D.Md, 2006), the United States District Court for the District of Maryland held that it was appropriate to exercise supplemental jurisdiction over declaratory judgment claims relating to insurance coverage because they arose out of the same case or controversy as the underlying claims. In O'Bannon, employees brought a class action lawsuit against an employer for racial discrimination and amended their complaint to add separate claims for declaratory judgment against the insurers for the defendant employer. Id. at 491 – 492. The defendant insurers argued that the district court should dismiss the employee's claims for declaratory judgment for lack of supplemental

jurisdiction because the claims lacked a common nucleus of operative facts. Id. at 492. The O'Bannon Court rejected this argument and noted that it is common practice for a party, who is a defendant in a case brought by an injured party, to implead a third-party under Fed. R. Civ. P. 14(a) and assert a claim for declaratory judgment to establish the scope of legal rights and obligations under a policy of insurance from the same facts as the underlying complaint. Id. at 493. The Court stated:

> This is commonplace because it makes sense to determine within the same proceeding, not only liability and damages, but also legal rights and obligations of involved parties with respect to the payment of . . . damages. Trying this latter issue separately in a different case or court system imposes an unnecessary burden on parties and on the courts.

Id. When coverage claims "draw from a common set of facts for their resolution, principles of efficiency compel trial of the claims in a single court." Id.; see State National Insurance Co. v. Yates, 391 F.3d 577 (D. Miss. 2004) (supplemental jurisdiction over counterclaim against local insurance agent where claims derived from common nucleus of operative facts); Insurance Company of North America v. SS Cape Charles, 843 F. Supp. 893 (S.D.N.Y. 1994) (supplemental jurisdiction over third-party claims because the claims arose out of common nucleus of operative facts).

In the instant case, the Court should exercise supplemental jurisdiction over AMICA's third-party claims because they are so related to the claims in the original action that they form part of the same case or controversy. A cursory review of the pleadings demonstrates that plaintiff's declaratory claims against AMICA and AMICA's declaratory judgment claims against Vitone (under Rule 14(a)) involve the same, common nucleus of operative facts. Wagenmaker and Vitone were involved

in an automobile accident in Vitone's 1999 Chevrolet Corvette on July 3, 2006. Wagenmaker and Vitone contend that they are entitled to Uninsured Motorist coverage under an automobile policy that AMICA issued to Vitone. AMICA contends, in rebuttal, that there is no Uninsured Motorist coverage because Vitone contacted AMICA's Underwriting Department several months before the accident and deleted all coverages ("Other than Collision") for the 1999 Chevrolet Corvette. In other words, the common nucleus at the center of all claims is whether Uninsured Motorist coverage was deleted from the policy. AMICA's declaratory judgment counterclaim against Wagenmaker and third-party claim against Vitone are identical. AMICA seeks a declaration (against both parties) that there is no coverage for the Uninsured Motorist claims because the coverage was deleted at Vitone's request. These claims derive from the same set of operative facts and they involve the same parties, documents, witnesses and evidence. The critical documents with respect to these claims are AMICA's insurance policy and the underwriting file. The critical witnesses in both cases will be Vitone and representatives of AMICA's Underwriting Department. Although Vitone has suggested (in his Motion) that the claims are "not inextricably linked," the issues and the parties are the same. The cases revolve around the same central fact pattern and the outcome of all claims will rest on whether Uninsured Motorist coverage exists under AMICA's policy. Because the claims are indistinguishable and inseparable, supplemental jurisdiction exists. *Exs. 1-2.*

It is worth noting that the claims in the instant case are even more inextricably linked then the claims at issue in O'Bannon. As outlined above, the O'Bannon court held that third-party claims for insurance coverage arose from the same facts as the underlying complaint for racial discrimination. In the case *sub*

*judice*, there is a closer nexus between Wagenmaker's claims for insurance coverage and AMICA's third-party claims regarding that same insurance coverage. As discussed above, these claims are identical. Because these claims satisfy the "case or controversy" standard, Vitone's Motion to Dismiss must be denied.

There is simply no merit to Vitone's argument that AMICA "destroyed" complete diversity by asserting the third-party claims. This contention is inconsistent with present statutory law (28 U.S.C. sec. 1367(a)) and case law. Also, Vitone's reliance of Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365 (1978) is entirely misplaced. In Owen Equipment & Erection Co. v. Kroger, the plaintiff, a citizen of Iowa, filed a wrongful action against the defendant, a citizen of Nebraska. Id. at 366. Federal jurisdiction was based on 28 U.S.C. §1332(a), diversity of citizenship, since the plaintiff was a citizen of Iowa and the defendant was a citizen of Nebraska. Id. at 367. The defendant then filed a third-party complaint pursuant to Fed. R. Civ. P. 14(a) against a third-party defendant, a citizen of Iowa. Id. The Nebraska defendant later moved for summary judgment against the plaintiff. Id. at 368. While the motion for summary judgment was pending, the plaintiff amended its complaint asserting a direct claim for wrongful death against the Iowa third-party defendant and naming it as an additional defendant. Id. The district court granted the Nebraska defendant's motion for summary judgment leaving only the Iowa plaintiff's claims against Iowa defendant. Id. The United States Supreme Court held that "there was no independent basis of federal jurisdiction over the [plaintiff]'s state-law tort action against the [defendant], since both [were] citizens of Iowa. Id. at 370. The relevant statute in issue was 28 U.S.C. §1332(a) (and not 28 U.S.C. sec. 1367(a)). Id. at 373. The district court did not have federal jurisdiction because:

> it [wa]s clear that the [plaintiff, a citizen of Iowa,] could not originally have brought suit in federal court naming [a citizen of Iowa] and [a citizen of Nebraska] as codefendants, since citizens of Iowa would have been on both sides of the litigation. Yet the identical lawsuit resulted when [the plaintiff] amended her complaint. Complete diversity was destroyed . . . [because] the 'matter in controversy' could not be between . . . citizens of different States.

Id. at 374. Thus, this case only addressed the issue of diversity jurisdiction and not supplemental jurisdiction as Vitone apparently argues. Id. at 373 – 374. In fact, in dictum, the Court recognized "that the exercise of ancillary jurisdiction over nonfederal claims has often been upheld in situations involving impleader, cross-claims or counterclaims." Id. at 375. "[A]ncillary jurisdiction typically involves claims by a defending party hailed into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in federal court." Id. at 376.

Here, the presence of the common nucleus of operative facts between plaintiff's claims against AMICA and AMICA's declaratory judgment claims against (plaintiff and) Vitone, allows for the assertion of supplemental jurisdiction.

**3. The exercise of supplemental jurisdiction will promote judicial economy, convenience and fairness.**

The proper exercise of supplemental jurisdiction in this case will promote judicial economy, convenience and fairness. See In re MTBE Product Liability Litigation, 510 F. Supp. 2d 299 (S.D.N.Y. 2007). Consistent with the express purpose of 28 U.S.C. sec. 1367(a), supplemental jurisdiction will necessarily conserve judicial resources and avoid multiplicity of litigation. It is only logical for the court to resolve the coverage issue in one case. The parties, issues, witnesses

and evidence are identical. "The resolution of these factually connected claims in a single proceeding would further the interests of conserving judicial resources . . . ." Insurance Company of North America, 843 F. Supp. 893, 895 (S.D.N.Y. 1994). In addition, the dismissal of the third-party claims would necessarily result in a duplication of effort by the state and federal courts. The same parties and witnesses would be compelled to appear in two different forums and, possibly, at two separate trials. It would also be fundamentally unfair if AMICA is forced to defend these issues in state and federal court simultaneously. Perhaps most importantly, dismissal of the third-party claim could result in two, inconsistent verdicts or judgments.

**4. Section 1367(b) is inapplicable in this case.**

28 U.S.C. §1367(b) does not pose a bar to the exercise of supplemental jurisdiction over Fed. R. Civ. P. 14(a) claims by a defendant/third-party plaintiff against a third-party defendant. *Ex. 4;* see Viacom Intern, Inc. v. Kearney, 212 F.3d 721, 726 (2d Cir. 2000). Section 1367(b) withholds supplemental jurisdiction over the claims of plaintiffs against parties joined to original action as additional parties under Fed. R. Civ. P. 14, 19, 20, or 24. Viacom Intern, Inc., 212 F.3d at 726. As the Fourth Circuit has explained,

> The subsection (b) limitations of supplemental jurisdiction are designed to prevent plaintiffs from circumventing the requirements of diversity. The House Report in the legislative history of § 1367(b) explains that its purpose is to prevent 'plaintiffs [from being able] to evade the jurisdictional requirement of 28 U.S.C. § 1332 by the simple expedient naming initially only those defendant whose joinder satisfies section 1332's requirements and later adding claims not within original federal jurisdiction against other defendants who have intervened or been joined on a supplemental basis.' . . . [A]lthough Congress wanted, in enacting §

> 1367, to enable parties to resolve in one action all of their disputes arising from the same core of facts and hereby to conserve judicial resources, it did not want plaintiffs to be able to plead a complaint craftily so as to force a nondiverse case in federal court. Because defendants are involuntarily brought into court, their joinders and impleaders were not deemed as suspect as those of the plaintiff, who is master of his complaint.

United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998). The subsection (b) limitations of supplemental jurisdiction "reflect[] Congress' intent to prevent original plaintiffs – but not defendant or third parties – from circumventing the requirements of diversity." Viacom Intern, Inc. v. Kearney, 212 F.3d at 726 – 727. In other words, 28 U.S.C. §1367(b) recognizes that the limitation of supplemental jurisdiction "applies only to *plaintiffs'* efforts to join nondiverse parties." United Capitol Ins. Co. v. Kapiloff, 155 F.3d at 492.

Here, 28 U.S.C. §1367(b) does not pose a bar to the exercise of supplemental jurisdiction over AMICA's Fed R. Civ. P. 14(a) claim for declaratory judgment against Vitone.

**5. There is no valid reason for the Court to decline to exercise supplemental jurisdiction over AMICA's third-party claims.**

None of the reasons outlined in Section 1367(c) for a court to decline to exercise supplemental jurisdiction apply in this case. This case does not raise a novel or overly complex issue of Rhode Island law. Likewise, because the claims arise from the same operative facts, there is no indication that AMICA's third-party will predominate over the plaintiff's claims. This Court has not dismissed the claims that form the basis of the federal jurisdiction in this case. Also, there are no exceptional circumstances which would warrant dismissal in this case. See In re MTBE Product Liability Litigation, 510 F. Supp. 2d 299 (S.D.N.Y. 2007).

**CONCLUSION**

WHEREFORE, the Defendant/Third-Party Plaintiff, AMICA, respectfully requests that the Court deny the Third-Party Defendant's Motion to Dismiss.

***REQUEST FOR HEARING***

Defendant/Third-Party Plaintiff respectfully requests a hearing on this matter.

Respectfully submitted,
Third-Party Plaintiff
AMICA Mutual Insurance Company
By its attorney,

Nicole J. Todesco

Nicole J. Todesco, Esq. (#7166)
SLOANE & WALSH, LLP
Three Center Plaza, 8th Floor
Boston, MA 02108
(617) 523–6010/(617) 227–0927 – *fax*
ntodesco@sloanewalsh.com

Dated: 3/3/08

John A. Donovan III, Pro Hac Vice
SLOANE & WALSH, LLP
Three Center Plaza, 8th Floor
Boston, MA 02108
(617) 523–6010/(617) 227–0927 – *fax*
jdonovan@sloanewalsh.com

S:\VITONE, VITO AND LINDA - AM-970-1808\Pleadings\Memorandum of Law in Opposition to third-party motion to dismiss.doc