UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOYCE WAGENMAKER,
Plaintiff,

v. : C.A. No.:08-cv-00041S

AMICA MUTUAL INSURANCE CO.,
Third-Party Plaintiff,

v.

VITO VITONE,
Third-Party Defendant.

**THIRD-PARTY DEFENDANT VITO VITONE'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AGAINST THIRD-PARTY PLAINTIFF AMICA MUTUAL INSURANCE COMPANY**

Now comes Vito Vitone, Third-Party Defendant in the above-captioned matter, and pursuant to Local Rule 56 of the United States District Court Rules Applicable to Civil Proceedings submits the within Statement of Undisputed Facts in support of his Cross-Motion for Summary Judgment with respect to Third-Party Plaintiff Amica Mutual Insurance Company's Complaint seeking Declaratory Relief as to its obligations under an automobile insurance policy issued to Mr. Vitone.

## I. Undisputed Facts

1. Vito Vitone ("Vitone") was severely injured in a motor vehicle accident on July 3, 2006, while he was operating his 1998 Chevrolet Corvette on Interstate Route 95 in the City of Cranston, Rhode Island. *See* Exhibit A, Affidavit of Vito Vitone ("Vitone Aff."), ¶ 18, ¶ 21.

2. The subject accident was caused by an unidentified hit-and-run driver, who fled the scene of the accident and has never been identified. Vitone Aff., ¶ 19, ¶ 20.

3. Amica Mutual Insurance Company issued a "**RHODE ISLAND PERSONAL AUTO POLICY**" (Policy No. 961138-23YV) ("the subject policy") to Vitone and his wife, Linda Vitone, as named insureds, with an initial policy period of November 25, 1994 to November 25, 1995. The Vitones renewed the subject policy yearly through 2006. Vitone Aff., ¶ 3.

4. In October 2005, Mr. Vitone received from Amica a proposed renewal policy for the upcoming policy period of November 25, 2005 to November 25, 2006. Vitone Aff., ¶ 4; Counterclaim for Declaratory Judgment (Document No. 23), p. 6, ¶ 4.

5. The proposed renewal policy purported to provide "**LIABILITY**", "**MEDICAL PAYMENTS**", "**DAMAGE TO YOUR AUTO**" and "**TOWING AND LABOR COSTS**" coverage for the following six vehicles: 2000 Chrysler 300M; 1994 Mercedes-Benz E420; 2002 Lincoln LS; 1999 Jeep Cherokee; 1998 Chevrolet Corvette; 2005 Hyundai Tucson GLS. Vitone Aff., ¶ 4.

6. The proposed renewal policy purported to provide coverage for the November 25, 2005 through November 25, 2006 policy period consistent with the coverage provided during the prior policy period. Vitone Aff., ¶ 4, ¶ 6.

7. The proposed renewal policy purported to provide liability coverage for all six vehicles in the amount of $500,000 per each accident. Premiums applicable to each vehicle for said liability coverage were individually allocated and assigned to each of the six vehicles. Vitone Aff., ¶ 5.

8. The proposed renewal policy purported to provide "**UNINSURED MOTORISTS**" coverage for bodily injury in the amount of $500,000 per each accident in exchange for a total premium of $392. Vitone Aff., ¶ 6.

9. The premium payment with respect to the "**UNINSURED MOTORISTS**" coverage under the proposed renewal policy was not divided or allocated among the six vehicles; rather, a total premium of $392 for "**UNINSURED MOTORISTS – BODILY INJURY**" coverage was added to the sum of the individual premiums charged for the coverages on each of the six vehicles. Vitone Aff., ¶ 7.

10. The proposed renewal policy's "**DECLARATIONS**" page did not indicate that $392 premium for the "**UNINSURED MOTORISTS**" coverage was divided or allocated among the six vehicles. *See* "**DECLARATIONS**", attached as Exhibit 1 to Vitone Aff., at 2, 3.

11. In October 2005, Vitone advised Amica via telephone that he wished to make changes to the insurance coverage provided under the subject policy. Vitone Aff., ¶ 8.

12. In October 2005, in a telephone communication with an Amica underwriter, Vitone requested that Amica delete the comprehensive, collision, and liability coverage under the subject policy for the November 25, 2005 through November 25, 2006 policy period with respect to the 1998 Chevrolet Corvette and the 2002 Lincoln LS. Vitone Aff., ¶ 9; Counterclaim for Declaratory Judgment, (Document No. 23) p. 3, ¶ 10.

13. Vitone at no time requested that Amica delete, remove, or change the "**UNINSURED MOTORISTS**" coverage provided under the subject policy. Vitone Aff., ¶ 10.

14. Amica's underwriting file contains no notation reflecting any specific request by Vitone during that telephone conversation to remove, delete, eliminate, reduce, or in any way change the "**UNINSURED MOTORISTS**" coverage under the subject policy. *See* "Amica Record of Telephone Conversations," attached as Exhibit 4B (Document No. 34-7) to the Affidavit of Linda S. Detroia (Document No. 34-5), filed by Amica as an attachment to the Memorandum of Law (Document No. 34) in Support of its Motion for Summary Judgment (Document No. 32).

15. Notwithstanding the changes made to the subject policy in October 2005, Vitone maintained liability coverage in the minimum amount of $500,000 per each accident for four (4) of the six (6) vehicles listed under the subject policy for the November 25, 2005 through November 25, 2006 policy period. Vitone Aff., ¶ 16.

16. At no time did Amica provide Vitone with an advisory notice approved by the Rhode Island Department of Business Regulation concerning the hazard of uninsured and/or underinsured motorists. Vitone Aff., ¶ 13.

17. At no time did Vitone sign an advisory notice approved by the Rhode Island Department of Business Regulation concerning the hazard of uninsured and/or underinsured motorists. Vitone Aff., ¶ 14.

18. Following the October 2005 telephone conversation with the Amica underwriter, Vitone received a letter from Linda Detroia of Amica and a "Coverage confirmation" form, but did not understand the materials to indicate that the "**UNINSURED MOTORISTS**" coverage provided under the subject policy had been deleted or changed in any way with respect to the November 25, 2005 through November 25, 2006 policy period. Vitone Aff., ¶ 15.

19. Amica issued the subject policy for the November 25, 2005 through November 25, 2006 policy period and Vitone received an "**AMENDED DECLARATIONS**" page purporting to delineate the coverage provided under subject policy. Vitone Aff., ¶ 14.

20. Vitone did not examine the "**AMENDED DECLARATIONS**" page until after the July 3, 2006 accident. Vitone Aff., ¶ 23.

21. Following the July 3, 2006 accident, Vitone made a claim under the "**UNINSURED MOTORISTS**" coverage of the subject policy. Vitone Aff., ¶ 21.

22. Amica has denied coverage under the "**UNINSURED MOTORISTS**" coverage of the subject policy with respect to Vitone's injuries on the ground that Vitone removed the "**UNINSURED MOTORISTS**" coverage from the subject policy with respect to the 1998 Corvette in October 2005, and also on the basis of the "OWNED BUT NOT INSURED" exclusion of the "**UNINSURED MOTORISTS**" coverage. Vitone Aff., ¶ 22.

23. As of July 3, 2006, Vitone continued to maintain liability coverage for four (4) vehicles under the subject policy in the amount of $500,000 per accident. Vitone Aff., ¶ 26.

24. As of July 3, 2006, Vitone believed that the "**UNINSURED MOTORISTS**" coverage under the subject policy protected him, as a named insured under the subject policy, against loss caused by uninsured motorists regardless of the insurance status of the vehicle in which he was traveling at the time of the injury. Vitone Aff., ¶ 27.

25. Vitone at no time received any reduction or rebate on the premium applicable to the "**UNINSURED MOTORISTS**" coverage under the subject policy. Vitone Aff., ¶ 17.

26. The premium for "**UNINSURED MOTORISTS**" coverage under the subject policy was set as a multi-car premium. Vitone was advised by Amica following the July 3, 2006 accident that Amica provided premiums for "**UNINSURED MOTORISTS**" coverage on a single or multi-car basis. Vitone Aff., ¶ 28. Accordingly, there was no corresponding reduction in premium with respect to Vitone's alleged deletion of "**UNINSURED MOTORISTS**" coverage from the subject policy.

Dated: September 15, 2008

Third-Party Defendant,
Vito Vitone,
By his Attorneys

/s/ Nicholas Mancini
Nicholas R. Mancini, Esq. #7100
nmancini@apslaw.com
Todd White, Esq. #5943
twhite@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607

## CERTIFICATION

I hereby certify that on this 15th day of September 2008, the within was electronically filed with the Court using the ECF system. The following counsel of record are registered with the Court and will be served electronically through the ECF system and by regular mail, postage prepaid:

David J. Oliveira, Esq.
155 South Main Street, Suite 305
Providence, RI 02903

Mark P. Dolan, Esq.
Rice Dolan & Kershaw
72 Pine Street, Suite 300
Providence, RI 02903

John A. Donovan III, Esq.
Nicole J. Tedesco, Esq.
Sloane & Walsh, LLP
Three Center Plaza, 8th Floor
Boston, MA 02108

/s/ Nicholas Mancini

*461294_1*